# �export Richmond.

## GEORGE W. PARKER v. COMMONWEALTH.

### January 18, 1923.

1. INTOXICATING LIQUORS—*Instructions—Where the Judge Considers that there had been no Intentional Violation of the Prohibition Act—Case at Bar.*—In the instant case, a prosecution under the prohibition act for the unlawful transportation of liquor, the court refused to instruct the jury "that as it appears to the court from the evidence that there has been no intentional violation of any provision of the prohibition act, but an unintentional or inadvertent violation thereof, they cannot impose a jail sentence upon the defendant."

    *Held:* That one defect in the instruction as offered was that it was not sufficiently guarded in expression so as not to express the opinion of the trial judge upon the guilt or innocence of the accused.

2. INTOXICATING LIQUORS—*Instructions—Where the Judge Considers that there had been no Intentional Violation of the Prohibition Act—Form of Instruction Approved.*—Under Acts of 1918, page 579, where it appears to the court that there has been no intentional violation of any provision of the prohibition act, the instruction to the jury should be substantially in the following form:    "Upon the subject of the guilt or innocence of the defendant, the court expresses no opinion; but if the jury should believe from the evidence that the defendant is guilty of the offense charged in the indictment, then the jury are instructed that under the law they cannot impose a jail sentence, for the reason that the court is of opinion that in no aspect of the case does it appear that there has been any intentional violation of any provision of the prohibition act, and in such cases the law requires that I should instruct you as I do."

3. INTOXICATING LIQUORS—*Instructions—Where the Judge Considers that there had been no Intentional Violation of the Prohibition Act—Case at Bar.*—In the instant case it was not error for the trial judge to refuse an instruction to the effect that as it appeared to the court that defendant had not been guilty of an intentional violation of the prohibition act they could not impose a jail sentence, where the Supreme Court of Appeals could not say that it did or should have appeared to the trial judge from the evidence that, if the accused was guilty as charged, there had been no intentional violation of any provision of the prohibition act.    On the contrary it is plain that, if the accused

knew what the package being carried by him contained, he was guilty of an intentional violation of the act. The trial judge's refusal of the instruction was evidence of his opinion that, if the accused was guilty, he had intentionally violated the act, and it could not be said that he was plainly wrong in coming to that conclusion.

4. INTOXICATING LIQUORS—*Prohibition Act—Instructions—Knowledge that Package Transported Contained Ardent Spirits.*—In a prosecution for violation of the prohibition act by the unlawful transportation of liquor, it was error to refuse an instruction that "in order to be guilty of transporting ardent spirits as charged in this indictment, the defendant must have known that the package handled by him contained ardent spirits," where accused in his testimony claimed that he did not know the contents of the bag he was carrying when arrested.

5. APPEAL AND ERROR—*Instructions—Error in Instructions—All Instructions must be Certified.*—Where a reversal is asked for on the ground of the court's refusal to give an instruction, as the error may have been cured by other instructions given, it must appear from the record that the appellate court has before it all of the instructions given, or some certificate of the court removing the uncertainty, so that it can and does see from the record that no instruction was given curing the error.

6. APPEAL AND ERROR—*Instructions—Error in Instructions—All Instructions must be Certified—Case at Bar.*—In the instant case the trial judge certified the record as follows: "The following instructions were offered  *  *  *  and the ruling of the court on each of them is hereby certified." Then followed five instructions, four of which were followed by the notations, "Refused and exception noted," signed by the initials of the judge. The fifth was not followed by such notation or signature.

   *Held:*   That the certificate of the trial judge showed all of the instructions which were offered by the accused and the Commonwealth, and that none of them had any reference to the subject of the instruction for the refusal of which a reversal was asked, unless it was the fifth, to which there was no notation or signature, and as to which the appellate court could not say whether it was refused or given, but which, if given, accentuated the error of the refusal of the instruction in question.

7. APPEAL AND ERROR—*Instructions—Record—Informality of Certificate— Ill Health of Judge.*—In the instant case the ill health of the trial judge was held to sufficiently account for and excuse the informality of the certificates with respect to the instructions.

Error to a judgment of the Circuit Court of Northampton county.

*Reversed.*

The accused was indicted and tried upon the charge. that he did, in the year 1921, within one year prior to the finding of the indictment, unlawfully transport from one point in the State of Virginia to another point in such State, into the county of Northampton, more than one quart of ardent spirits, etc.    There was a verdict of the jury finding the accused guilty as charged in the indictment and fixing his punishment at two months in jail and a fine of two hundred dollars.    The judgment under review was entered accordingly.

There were only two witnesses, the police officer and the accused.

The police officer testified as follows:

"That he had been employed as special police by the New York, Philadelphia and Norfolk Railroad Company for _____ years.    That he had been watching George W. Parker's movements for more than a month around the property of the railroad at Cape Charles, after the arrival of trains from New York and Philadelphia during the early morning hours; that several times he had seen Parker leave from where the Pullman cars had stopped, going in the direction of the Bay Shore, which was in the opposite direction he would take in going to his home or to the town of Cape Charles, and on each occasion he had carried a bag, which created suspicion that he was. transporting liquor, and that on the _____ day of _____,. A. D. 1921, while witness was on his way from the town of Cape Charles to the property of the New York, Philadelphia and Norfolk Railroad Company,. he saw the defendant, Parker, leave one of the New York sleeper cars after passengers had transferred to steamer; that he was carrying a sack as usual, and started towards the Bay Shore, where his wife was waiting for him, driving a grey horse to a small wagon; that the witness had seen Parker drive the same horse and wagon in Cape Charles on a number of occasions.    The

witness ran and caught up with Parker while on the company's property, and demanded of the defendant, who had started to run, to stop, and asked him what he had in his sack; Parker replied he did not know, and that if he, Nelson, wanted to know to look.

"Nelson untied the sack and found inside four quarts of whiskey. That while the witness was searching the sack, Parker started to run, and was stopped by officer Nelson, and placed under arrest."

The accused testified as follows: "That he had said bag, and that he did not know what its contents were, and further stated that (the) porter on Pullman car had given it to him to take to his boarding house. The porter was afterwards arrested upon defendant's statement, and denied ever having given the bag or contents to the defendant, Parker, but forfeited his bond and did not appear for trial."

It appears from the record that the trial judge died following the trial before he certified the evidence, but the succeeding judge of the court did this and no objection is urged by the Attorney-General on that subject.

The succeeding judge, however, did not certify what instructions were given or refused on the trial, but next before the clerk's final certificate at the foot of the record before us, the succeeding judge certifies, so far as material, as follows: "I  *  *  certify the foregoing as the state of the record as signed by the late Judge James H. Fletcher, Jr., and I further certify that the state of his health was such during the last three or four months of his life that he was incapable of sustained effort either physical or mental." In the record before the appellate court, appearing before the succeeding judge's certificates, are the following certificates signed with the initials of Judge Fletcher, who presided at the trial of the instant case.

"4. The following instructions were offered before trial, and the ruling of the court on each of them is hereby certified:

" 'The court instructs the jury that in order to be guilty of transporting ardent spirits as charged in this indictment the defendant must have known that the package handled by him contained ardent spirits.'

"Refused and exception noted.

"J. H. F., Jr.

"Motion made to set aside the verdict of the jury and grant the defendant a new trial on account of the verdict being contrary to the law and evidence.

"Refused and exception.

"J. H. F., Jr.

"The court instructs the jury that before you can convict the defendant for transporting ardent spirits you must believe he is transporting it for sale, and the burden of proving that he is transporting for sale is upon the Commonwealth.

"That every person is presumed to be innocent until his guilt shall be conclusively shown.

"Refused, exception noted.

"The court instructs the jury that to be guilty of transporting ardent spirits under the law it must be the carrying of it from one place to some other place.

"The court instructs the jury that as it appears to the court from the evidence that there has been no intentional violation of any provision of the prohibition act, but an unintentional or inadvertent violation thereof, they cannot impose a jail sentence upon the defendant.

"Refused and exception noted.

"J. H. F., Jr."

*J. T. Newsome* and *W. R. Walker*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1, 2] In the view we take of the case only two questions raised by the assignments of error need be considered. They will be disposed of in their order as stated below.

1. Did the court err in refusing to give the following instruction offered by the accused?

"The court instructs the jury that as it appears to the court from the evidence that there has been no intentional violation of any provision of the prohibition act, but an unintentional or inadvertent violation thereof, they cannot impose a jail sentence upon the defendant."

The question must be answered in the negative.

The language of the statute on this subject is contained in section 5 of chapter 388 of the Acts of 1918 (Acts 1918, at page 579) and is as follows:

" * * where, upon the trial of any charge of a violation of this act, it shall appear to the court trying the case that there has been no intentional violation of any provision thereof, but an unintentional or inadvertent violation thereof, then such court shall instruct the jury that they cannot impose a jail sentence."

One defect in the instruction as offered is that it is not sufficiently guarded in expression so as not to express the opinion of the trial judge upon the guilt or

innocence of the accused.   It is open to the same objection as was the instruction condemned by this court in *Price's Case*, 132 Va. 582, 110 S. E. 349.   To avoid such objection such an instruction, when given, should be substantially in the following form, namely: "Upon the subject of the guilt or innocence of the defendant, the court expresses no opinion; but if the jury should believe from the evidence that the defendant is guilty of the offense charged in the indictment, then the jury are instructed that under the law they cannot impose a jail sentence, for the reason that the court is of opinion that in no aspect of the case does it appear that there has been any intentional violation of any provision of the prohibition act, and in such cases the law requires that I should instruct you as I do."

[3] Further: We cannot say that it did or should have appeared to the trial judge from the evidence in the instant case that, if the accused was guilty as charged, there had been no intentional violation of any provision of the prohibition act.   On the contrary it is plain that if the accused knew what the package being carried by him contained, he was guilty of an intentional violation of the act.   The judge heard the testimony in the case and observed the demeanor of the accused, and doubtless considered the evidence as bearing upon the subject.   His refusal of the instruction evidences that he was of opinion that if the accused was guilty he had intentionally violated the act.   We cannot say that he was plainly wrong in coming to that conclusion.

[4] 2. Did the court err in refusing to give the following instruction offered by the accused:

"The court instructs the jury that in order to be guilty of transporting ardent spirits as charged in this indictment, the defendant must have known that the package handled by him contained ardent spirits."

This question must be answered in the affirmative..

The accused, by his testimony, claimed that he did. not know the contents of the bag he was carrying when arrested. If true, this was a complete defense. This was the only defense he presented. Whether his testimony on the point was credible or not was for the jury. They may or may not have believed it to be true. But certainly, as he expressly asked it, he was entitled to have the jury instructed as requested upon this, the turning point in the case, upon his theory of the case, to sustain which there was testimony upon the credibility of which he had the right to have the jury pass..

[5, 6] The Attorney-General does not controvert the position that it was reversible error for the court to refuse to give the instruction in question; but takes the position that the error may have been cured by some other instruction or instructions which may have been given; and that it does not appear from the record that some other instruction was not given which cured the error; that it must appear from the record that the appellate court has before it all of the instructions given, or some certificate of the court removing the uncertainty, so that it can see and does see from the record that no instruction was given curing the error, before the court will reverse a case for error in refusing instructions; citing *Harris' Case*, 133 Va. 700, 112 S. E. 753. The rule of procedure relied upon by the Attorney-General is well established, and one that properly governs an appellate court and which governs this court. But we cannot agree with the position that all of the instructions given do not appear in the record before us, if any instruction was given. The trial judge certifies in the record before us as follows: "The following instructions were offered   *   *   and the ruling of the court on each of them is hereby certified:" Then

follow five instructions, including the instruction in question.   Four of these instructions, other than the instruction in question, are in pairs, and under each two of them are the notations, "Refused and exception noted." (Signed) "J. H. F., Jr.," the initials of the trial judge.   None of these four instructions covers or attempts to cover the same point as the instruction in question, except the one which is in the following language:

"The court instructs the jury that to be guilty of transporting ardent spirits under the law it must be the carrying of it from one place to some other place." There is no notation or signature of the judge immediately under this instruction, so that we cannot say whether it was refused or given.   If it were material, we would have to hold that it does not appear from the record before us to have been given.   But if given, it accentuated the error in the refusal of the instruction in question.   If refused, it left the jury uninstructed on the turning point in the case.

As said in *Harris' Case*, 133 Va. 700, 112 S. E. 753: "The rule is that the record should show in terms, or by clear inference, that the instructions found in the record are all instructions given by the trial court." The certificates of the trial judge in the record in the instant case show, as we think, when fairly construed, all of the instructions which were offered by the accused and the Commonwealth; they show that none of the instructions offered, which had any reference to the subject of the instruction in question, was given, unless the one last above quoted was given, which, as aforesaid, if given, but accentuated the error of the refusal of the instruction in question.   Hence, it certainly appears from the record that no instruction was given which cured the error in the refusal of the instruction in question.

[7] The ill health of the trial judge sufficiently accounts for and excuses, as we think, the informality of the certificates with respect to the instructions.

For the error in the refusal of the trial court to give the instruction mentioned in the second question stated above, the case must be reversed and a new trial awarded.

*Reversed and remanded for a new trial.*